IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WILLIAM O. BARKSDALE,

          Petitioner,

v.

ROBERT MAY, Warden, and
ATTORNEY GENERAL OF THE
STATE OF DELAWARE,

          Respondents.

Civil Action No. 20-1120-CFC

---

William O. Barksdale. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**<u>MEMORANDUM OPINION</u>**

September 13, 2023
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner William O. Barksdale's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C § 2254. (D.I. 1) The State filed an Answer in opposition. (D.I. 9) For the reasons discussed, the Court will deny the relief requested and dismiss the Petition.

I.     **BACKGROUND**

> [Petitioner] was indicted in July 2014, on 19 felony charges: two counts of Drug Dealing-Heroin; six counts of Possession of a Firearm During the Commission of a Felony; one count of Aggravated Possession of Heroin; one count of Receiving a Stolen Firearm; one count of Possession of a Destructive Weapon; two counts of Conspiracy in the Second Degree; three counts of Possession or Control of a Firearm by a Person Prohibited ["PFBPP"]; and three counts of Possession or Control of Ammunition by a Person Prohibited.
>
> The indictment was the result of an almost year-long drug investigation that culminated in the seizure of, *inter alia*, over 300 grams of heroin, three guns, and $20,000 cash. Most of [Petitioner's seven] co-defendants pleaded guilty, signed cooperation agreements with the State, and agreed to testify against him. The State also had DNA evidence linking [Petitioner] to the drugs and the apartment where a large cache of contraband was found. The manager of the apartment complex where the drugs were found was set to testify he saw [Petitioner] coming out of the target apartment frequently, and the person whose name was on that apartment's lease was going to testify that she was there for only one day and that [Petitioner] occupied it and paid the rent thereafter. [Petitioner], if convicted of all charges, faced a minimum sentence of 122 years in prison.
>
> [...] [Petitioner's] two-week trial was scheduled to begin May 11, 2015; jury selection was to occur the preceding week, on May 6, 2015, with a specially-summoned venire panel.

> [Petitioner's] final case review was conducted on May 4, 2015. He rejected the then-pending plea offer and his counsel filed his proposed supplemental *voir dire* questions for jury selection.
>
> The [Superior] Court conducted a final status conference the next day, May 5, 2015 – the day before jury selection – to address any remaining logistics related to jury selection and trial. [Petitioner's] trial counsel, Patrick J. Collins, Esquire, outlined the evidence against his client and the State's then-pending plea offer. The plea offer, which was the result of extended negotiations, called for [Petitioner] to plead guilty to one count of Drug Dealing-Heroin and one count of Possession of a Firearm by a Person Prohibited. The State would enter a *nolle prosequi* on the remaining charges. The State also agreed to forgo prosecution of certain potential charges that had arisen or been discovered during the course of the State's ongoing investigation of [Petitioner]. [...] [T]he State agreed to charges that called for just a minimum of 12 years of incarceration and to recommend no more than 20 years at the time of sentencing.
>
> At the parties' request, the Court engaged in a colloquy with [Petitioner] to insure that he understood the terms of the plea agreement offered and the potential risks of rejecting that offer. During that colloquy, [Petitioner] requested an opportunity to further consider the plea offer and discuss it with his counsel. The [Superior] Court recessed to allow [Petitioner] the opportunity to do so.
>
> The status conference resumed later that afternoon when the [Superior] Court was informed that [Petitioner] wished to enter a guilty plea; he had executed the plea agreement and the guilty plea form during the recess.

*State v. Barksdale*, 2020 WL 2096148, at *1–2 (Del. Super. Ct. Apr. 30, 2020) (cleaned up). That same day, May 5, 2015, Petitioner pled guilty to one count each of drug

dealing and PFBPP and agreed he was eligible to be sentenced as a habitual offender under 11 Del. C. § 4214(a). (D.I. 10-6 at 39-42)

Ten days later, on May 15, 2015, Petitioner filed a letter and *pro se* motion asking to withdraw his guilty plea, and subsequently moved for permission to participate in his defense. (D.I. 10-1 at Entry Nos. 34- 36) On May 29, 2015, trial counsel filed motions to withdraw Petitioner's guilty plea and his representation of Petitioner. (D.I. 10-1 at Entry Nos. 37, 38) The Superior Court granted trial counsel's motion to withdraw as Petitioner's representation, and appointed new counsel to represent Petitioner. (D.I. 10-1 at Entry No. 42) The Superior Court held a hearing on September 21, 2015, and denied Petitioner's motion to withdraw his guilty plea. *See State v. Barksdale*, 2015 WL 5676895, at *1 (Del. Super. Ct. Sept. 21, 2015). On October 8, 2015, the Superior Court sentenced Petitioner to an aggregate 35-year sentence at Level V, suspended after 30 years for decreasing levels of supervision. (D.I. 10-2 at 11-12) The Delaware Supreme Court affirmed the Superior Court's judgment on April 6, 2016. *See Barksdale v. State*, 134 A.3d 764 (Table), 2016 WL 2585892, at *3 (Del. Apr. 6, 2016).

In March 2017, Petitioner filed in the Superior Court a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to appoint counsel. (D.I. 10-13 at 73-80, 83-84) The Superior Court denied the motion to appoint counsel. (D.I. 10-1 at Entry No. 66) In April 2020, the Superior Court denied the Rule 61 motion. *See Barksdale*, 2020 WL 2096148, at *1. The Delaware Supreme Court affirmed that decision. *See Barksdale v. State*, 250 A.3d 764 (Table), 2021 WL 1423473, at *1 (Del. Apr. 14, 2021).

3

## II.    GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir. 1999). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available);

*see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[1] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451

---

[1] *Murray*, 477 U.S. at 496.

6

(2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it

7

may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

The Petition asserts the following five Claims for relief: (1) trial counsel provided ineffective assistance by not: (a) filing a motion to suppress; (b) obtaining an expert for DNA analysis; and (c) investigating Petitioner's case (D.I. 7 at 5); (2) trial counsel provided ineffective assistance by not informing Petitioner about a confession from his co-defendant, Keith Johnson (D.I. 1 at 7); (3) trial counsel provided ineffective assistance by not recognizing the insufficiency of the State's evidence against Petitioner because he did not investigate inconsistencies, contradictions, and fabrications in the arrest and search warrants (D.I. 1 at 9); (4) trial counsel was ineffective for rushing Petitioner into pleading guilty (D.I. 1 at 10); and (5) Petitioner is actually innocent (D.I. 1-2 at 1-3)

### A. Claim Four: Trial Counsel Coerced/Rushed Guilty Plea

In Claim Four, Petitioner contends that trial counsel rushed him into a "plea bargain that wasn't in [his] best interest." (D.I. 1 at 10) Petitioner asserts that trial counsel "told [him] that [he] was gonna lose at trial and that [he] better take this deal even if [he's] innocent." (*Id.*)

Petitioner presented this same argument to the Superior Court in a motion to withdraw his guilty plea, arguing that trial counsel coerced and rushed him into pleading guilty. *See Barksdale*, 2015 WL 5676895, at *5. In declining to grant the motion, the Superior Court noted that the "record belies" Petitioner's assertion of coercion, and found that Petitioner was bound by the oral and written representations he made during his guilty plea that he was voluntarily and knowingly entering a guilty plea. *See id.* Petitioner re-asserted the argument concerning trial counsel's alleged coercion to the Delaware Supreme Court on direct appeal. *See Barksdale*, 2016 WL 2585892, at *2. Although ineffective assistance of counsel claims are not normally reviewed on direct appeal, the Delaware Supreme Court considered Petitioner's argument when it affirmed the Superior Court's denial of Petitioner's motion to withdraw his plea.[2] *Id.* Given these circumstances, Claim Four will only warrant relief if the Delaware Supreme Court's

---

[2]The fact that the Superior Court declined to consider the ineffective assistance of trial counsel ("IATC") claim Petitioner presented in his Rule 61 motion—which alleged that trial counsel coerced him into pleading guilty by rushing him to take the—as barred under Delaware Superior Court Criminal Rule 61(4) for being formerly adjudicated demonstrates that the Delaware Supreme Court adjudicated the merits of the IATC argument in Claim Four. *See Barksdale*, 2020 WL 2096148, at *4. On habeas review, the Court views the Superior Court's application of Rule 61(i)(4) as an indication that the claim was adjudicated on the merits. *See Cone v. Bell*, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review.").

9

decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687–96. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

A court may choose to address the prejudice prong before the deficient performance prong, and may reject an ineffectiveness claim solely on the ground that the movant was not prejudiced. *See Strickland*, 466 U.S. at 668. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the

governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Delaware Supreme Court's decision was not contrary to clearly established federal law because that court correctly identified the *Strickland/Hill* standard applicable to Claim Four.[3] *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be

---

[3]The Delaware Supreme Court cited *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997) which, in turn, cited *Strickland* and *Hill*.

11

substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

On direct appeal, the Delaware Supreme Court implicitly denied as meritless Petitioner's contention that trial counsel was ineffective for coercing or rushing Petitioner into pleading guilty when it held that Petitioner's assertion of coercion was belied by the statements he made during the plea colloquy and by the statements he made in the plea's supporting documents. *See Barksdale*, 2016 WL 2585892, at *2. The Delaware Supreme Court also opined that "the record showed Former Counsel had a clear understanding of the State's case and negotiated a beneficial plea for [Petitioner] that reduced his sentencing risk from 122 years in prison or multiple life sentences to a twelve year minimum sentence, with an agreement by the State not to recommend more than twenty years of non-suspended prison time." *Id.* For the reasons set forth below, the Court concludes that this decision involved a reasonable application of clearly established federal law.

Here, the transcript of what started out as Petitioner's final status conference on the day before jury selection for Petitioner's scheduled trial—but was transformed into a plea colloquy—demonstrates that Petitioner had sufficient time to discuss with trial counsel the evidence against him and the State's plea offer. (D.I. 10-13 at 17) At the beginning of the status conference, trial counsel outlined the substantial evidence against Petitioner, the State's then-pending plea offer, and the substantial sentence Petitioner faced if convicted of all charges at trial (minimum mandatory of 122 years with

a maximum sentence of life). (D.I. 10-13 at 17-26, 31-33) At the parties' request, the Superior Court engaged in a plea colloquy with Petitioner to ensure that he understood the terms of the plea agreement offered and the potential risks of rejecting that offer. (*Id.* at 26-31) During that colloquy, Petitioner requested an opportunity to further consider the plea offer and discuss it with trial counsel. (*Id.* at 31-34) The Superior Court recessed to allow Petitioner the opportunity to do so. (*Id.* at 32-35) Once the hearing resumed, Petitioner confirmed that the decision to plead guilty was his alone. (*Id.* at 41) The Superior Court engaged in a colloquy with Petitioner, and the plea colloquy transcript contains Petitioner's clear and explicit statements that: (1) he had thoroughly reviewed the plea paperwork with trial counsel; (2) he had sufficient time to discuss his case with trial counsel; (3) he was satisfied with trial counsel's representation; and (4) he was not threatened or forced to plead guilty. (*Id.* at 49-52) Petitioner explicitly acknowledged that he had entered other guilty pleas before the Superior Court and that he fully understood the rights he was waiving by entering a guilty plea. (*Id.* at 42-43) Petitioner also stated that he understood the penalties and sentencing enhancements for the charges to which he was pleading guilty, and that he faced a potential sentence of 12 years "up to life, plus [15] years." (*Id.* at 44-47)

    It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The plea colloquy transcript explicitly contradicts Petitioner's unsupported allegations in this proceeding that trial counsel rushed him into pleading guilty, and Petitioner has not provided compelling evidence as to why the statements he made during the plea colloquy should

13

not be presumptively accepted as true. Consequently, the Delaware Supreme Court reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea.[4] Given these circumstances, the Court concludes Petitioner has failed to demonstrate that trial counsel's performance was objectively unreasonable.

In addition, Petitioner cannot demonstrate a reasonable probability that he would have gone to trial but for trial counsel "rushing" him. Petitioner received a significant benefit by pleading guilty. If convicted at trial, Petitioner faced a minimum mandatory sentence of approximately 122 years, but trial counsel negotiated a plea agreement that called for a minimum mandatory sentence of 12 years. (D.I. 10-9 at 88) In exchange for Petitioner's plea, the State agreed to cap its sentencing recommendation to 20 years of Level V imprisonment and to forego prosecuting Petitioner for assaulting an inmate in a prison facility and for shooting at someone in an apartment complex. (D.I. 10-12 at 6; 10-13 at 27) Based on the foregoing, Petitioner cannot satisfy the prejudice prong of the *Strickland/Hill* standard.

In sum, the Court finds that the Delaware Supreme Court's rejection of Petitioner's contention that trial counsel "coerced" him into pleading guilty was neither contrary to, nor an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts in light of the evidence. Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d).

---

[4] Although the Delaware Supreme Court did not cite *Blackledge* when determining the voluntariness of Petitioner's guilty plea, the Delaware case to which it cited—*Somerville*, 703 A.2d at 632—did cite *Blackledge*.

14

### B. Claims One, Two and Three: Procedurally Barred

Claims One, Two, and Three assert that trial counsel provided ineffective assistance by: (1) not filing a motion to suppress, not obtaining an expert for DNA analysis, and not investigating Petitioner's case (D.I. 7 at 5); (2) not informing Petitioner about a confession from his co-defendant, Keith Johnson (D.I. 1 at 7); and (3) not recognizing the insufficiency of the State's evidence against Petitioner by investigating inconsistencies, contradictions, and fabrications in the arrest and search warrants (D.I. 1 at 9). The record reveals that Petitioner did not exhaust state remedies for the IATC allegations in Claims One, Two, and Three because he did not present them to the Delaware Supreme Court in his Rule 61 appeal.[5]

Any attempt by Petitioner to raise Claims One, Two, and Three in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). *See Parker v. DeMatteis*, 2021 WL 3709733, at *6 (D. Del. Aug. 20, 2021). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is

---

[5]To the extent Petitioner presented Claims One (a) (failure to file suppression motion) and One (b) (failure to obtain DNA expert) in his direct appeal, that presentation did not exhaust state remedies because the Delaware Supreme Court declined to consider Claims One (a) and (b) on the merits due to the fact that IATC claims must first be presented to the Superior Court. *See Barksdale*, 2016 WL 2585892, at *2; *see also Waples v. Phelps*, 2008 WL 1743400, at *2 (D. Del. Apr. 16, 2008). Similarly, although Petitioner presented arguments substantially similar to the ones presented in Claims One (a), (c), and Three (D.I. 10-13 at 75, 79) in his Rule 61 motion, Petitioner did not include those Claims when he appealed the Superior Court's denial of his Rule 61 motion. And finally, although Petitioner argued on postconviction appeal that his co-defendant Keith Johnson's confession about storing drugs in the apartment demonstrated his actual innocence (D.I. 10-8 at 3), that presentation did not exhaust state remedies for Claim Two because Petitioner did not argue that trial counsel provided ineffective assistance by failing to inform him about the confession.

newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims. Similarly, the exceptions to Rule 61 bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to Claims One, Two, and Three.

Since Petitioner is precluded from exhausting state remedies for the instant three Claims at this point, the Court must excuse Petitioner's failure to exhaust but treat the Claims as procedurally defaulted. Consequently, the Court cannot review the merits of Claims One, Two, and Three absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

Petitioner does not assert any cause for his default of Claims One, Two, and Three, presumably because he incorrectly believes that he exhausted these Claims in the state courts. (D.I. 1 at 6, 8-10) In the absence of cause, the Court does not need to address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate prejudice. A defendant who "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged ... may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). As the Court previously determined with respect to Claim Four, Petitioner is bound by the representations he made that his plea was knowing and voluntary. *See supra* at Section III.A. By entering a voluntary and knowing guilty plea, Petitioner has waived claims of ineffective assistance of counsel involving counsel's performance prior to the entry of the guilty plea that do not

16

challenge the voluntariness of his plea,[6] as well as "all nonjurisdictional issues"[7] that occurred prior to the entry of the plea. *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007). Claims One, Two, and Three assert errors associated with trial counsel's pre-plea performance that do not challenge the voluntariness of his plea. In short, Petitioner has failed to establish the prejudice necessary to overcome his procedural default of Claims One, Two and Three.

Finally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. *See infra* at Section III.C. Accordingly, the Court will deny Claims One, Two and Three as procedurally barred from federal habeas review.

### C. Claim Five: Actual Innocence

In his final Claim, Petitioner asserts a freestanding claim of actual innocence. He alleges that he was illegally charged with evidence that was found at somebody's house. In support of his Claim, Petitioner asserts that he "was not the owner or renter of that house. [His] name was not on any lease. [H]e did not receive mail at [the residence]." (D.I. 1-2 at 1)

Although, in "certain exceptional cases involving a compelling claim of actual innocence," a prisoner may assert actual innocence as a gateway for obtaining habeas

---

[6]*See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

[7]As explained by the Court of Appeals for the Tenth Circuit, the term "non-jurisdictional" is somewhat confusing: "The most accurate statement of the law would be . . . [that a] guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court." *United States v. DeVaughn*, 694 F.3d 1141, 1193 (10th Cir. 2012).

17

review of defaulted claims,[8] whether a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence. See *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). Even for gateway claims, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Assuming, *arguendo*, that an assertion of actual innocence could constitute a freestanding claim, a petitioner's burden on any such claim "would necessarily be extraordinarily high" and "more demanding" than that applied to gateway actual-innocence claims. *Herrera v. Collins*, 506 U.S. 390, 416 (1993); see also *Reeves*, 897 F.3d at 160 n.4 (describing hypothetical freestanding actual-innocence standard as "more demanding" than that applied to gateway actual-innocence claims). To put the burden for establishing a freestanding claim of actual innocence in perspective, a gateway actual innocence claim that is asserted in an effort to overcome the statute of limitations bar for habeas cases will only prevail if it is based on "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

   Here, Petitioner has not presented any facts to establish his actual innocence or any colorable evidence of his actual innocence. Therefore, Petitioner's instant assertion of innocence does not satisfy the *McQuiggan/Schlup* standard for actual innocence.

---

[8]*House v. Bell*, 547 U.S. 518, 521, 536-37 (2006).

18

## IV.   CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition without an evidentiary hearing.

The Court will issue an Order consistent with this Memorandum Opinion.